FILED & ENTERED

NOV 12 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY egarcia DEPUTY CLERK

# NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re:<br><br>INTERCARE HEALTH SYSTEMS, INC.,<br><br>Debtor. | Case No. 2:09-bk-29121-PC<br><br>Chapter 11<br><br>**MEMORANDUM DECISION**<br><br>Date: November 6, 2013<br>Time: 9:00 a.m.<br>Place: United States Bankruptcy Court<br>Courtroom # 1468<br>255 East Temple Street<br>Los Angeles, CA 90012 |

On May 14, 2013, the United States Department of Treasury – Internal Revenue Service ("IRS") filed an amended proof of claim ("Claim # 1-3") in the above referenced case asserting an unsecured priority claim under § 507(a)(8)(D) in the amount of $2,322,545.20. Debtor, Intercare Health Systems, Inc. ("Intercare") objects to the priority sought by the IRS, asserting that the three year period provided in § 507(a)(8)(D) expired prior to the petition date. Having considered Intercare's motion to disallow Claim # 1-3 and the IRS's opposition thereto, the reply, the evidentiary record, and arguments of counsel, the court makes the following findings

of fact and conclusions of law pursuant to F.R.Civ.P. 52(a),[1] as incorporated into FRBP 7052 and applied to contested matters by FRBP 9014(c).

## I. STATEMENT OF FACTS

On December 27, 2002, Intercare filed a voluntary petition under chapter 11 of the Code in Case No. 2:02-bk-46385, In re Intercare Health Systems, Inc., Debtor, in the United States Bankruptcy Court, Central District of California, Los Angeles Division ("First Case"). On January 21, 2005, Intercare filed a First Amended Joint Chapter 11 Plan of Reorganization in the First Case ("First Case Plan"). In paragraph II(B)(2) of the First Case Plan, Intercare listed the IRS as the holder of a tax claim entitled to priority under § 507(a)(8) in the amount of $8,724,180.[2] In its treatment of the IRS's priority tax claim, Intercare provided, in pertinent part:

> In the event the Reorganized Debtor defaults on its obligations to the IRS under the Plan prior to a Final Decree closing the Reorganized Debtor's bankruptcy case, the IRS must provide the Reorganized Debtor with a notice of such default by mail and facsimile ("Notice of Default"). In the event the noticed default (the "Noticed Default") is not cured within thirty (30) days of the Notice of Default (the "30-Day Period"), the IRS must provide the Reorganized Debtor with a notice of no cure by mail and facsimile (the "No Cure Notice") before seeking to exercise its remedies pursuant to the Bankruptcy Code. In the event of a No Cure Notice by the IRS, and the Noticed Default is not cured, the payments hereunder to the Landlords for the Prepetition Real Property Rent Cure will cease until such Noticed Default is cured.

---

[1] Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330 after its amendment by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 (2005). "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P."). "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[2] "The IRS filed a total claim against [Intercare] in the amount of $13,094,355.26, which include[d] an asserted secured claim in the amount of $7,393,877.77, . . . an unsecured priority claim in the amount of $4,574,166.26, and a general unsecured claim in the amount of $1,126,311.00. The Debtor [reduced] the total amount of the IRS's priority tax claims against the Estate to the total amount listed . . . for purposes of the Plan." First Case Plan, 8: fn. 9.

> In the event the Reorganized Debtor defaults on its obligations to the IRS under the Plan <u>after</u> the entry of a Final Decree closing the Reorganized Debtor's bankruptcy case, the IRS may exercise its regular collection procedures to cure such default(s).[3]

On May 6, 2005, an Amended Order Confirming First Amended Joint Chapter 11 Plan of Reorganization was entered in the First Case which re-vested the bankruptcy estate in the reorganized debtor subject to the terms of the confirmed plan.

According to the IRS, the IRS contacted Intercare's attorney, Michael Kogan on October 18, 2005, regarding the first plan payment due to the IRS on October 19, 2005. On October 20, 2005, Mr. Kogan advised the IRS that the first plan payment would be made on November 18, 2005. That payment was not made. On December 28, 2005, the IRS sent Intercare a Notice of Default as required by the confirmed First Case Plan advising Intercare that it had defaulted by failing to make the first quarterly plan payment of $411,209 that was due on October 19, 2005, and demanding that Intercare cure the default within 30 days. On January 4, 2006, Intercare paid the sum of $411,209 to the IRS.

By letter from Mr. Kogan dated January 10, 2006, Intercare and the IRS stipulated that Intercare was no longer in default in the payment of the IRS's priority tax claim under the terms of the First Case Plan. Intercare and the IRS further agreed to a modification of the terms for payment of the IRS's priority tax claim under the confirmed plan. Mr. Kogan's January 10, 2006, letter states:

> Pursuant to our conversations, this letter will memorialize our agreement to <u>modify</u> the timing of payments due the IRS pursuant to the First Amended Joint Chapter 11 Plan of Reorganization (the "Plan"), which was approved by the United States Bankruptcy Court by an order entered on May 9, 2005, and amend my previous correspondence of January 9, 2006.
>
> As agreed Intercare Health Systems, Inc. (the "Debtor") has paid the $411,209.00 Plan payment due October 18, 2005, plus interest, to no longer be in default under the provisions of the Plan. <u>Therefore, by receipt of the payment on January 4, 2006 by the IRS, the Debtor is no longer in default under the provisions of the Plan</u>.

---

[3] <u>Id.</u> at 9:5-16.

3

> The IRS agrees that in lieu of the quarterly payments as set forth in the Plan, it will agree to accept weekly payments of $50,000 from the Debtor which will be due the Friday of each week (however, the Debtor has agreed to make its best efforts to messenger such payments to your attention on Wednesdays). The first payment will be due on January 13, 2006. Such payments will be to your attention so that they can be properly allocated. The due date will not be changed on such payments. If each weekly payment as described above is made timely, the IRS will not charge interest on the quarterly payments. However, if a weekly payment is late, then at the option of the IRS, the IRS can request (in writing) that the Debtor pay interest at the IRS's applicable interest rate until the cumulative amount of the weekly payments equal the quarterly payment due or the weekly payments are current. The IRS has agreed to inform the Debtor of any interest due under this arrangement.
>
> The Debtor also agrees that the first three payments will be applied to the outstanding administrative claim of the IRS in the amount of $127,994.10, until paid in full.
>
> It is understood that at certain times the cumulative payments may not equal the quarterly amount due, however, the IRS has agreed that the Debtor is not in default, if the Debtor has continued to make the weekly payments described above, or the last quarterly payment has been paid in full prior to the next quarterly payment due date.[4]

On February 21, 2007, the IRS again restructured payments due by Intercare under the confirmed First Case Plan. Intercare claims that it "had other missed payments and defaults under the First Case Plan, and accordingly the IRS agreed in February 2007 to accept weekly payments in the amount of $32,500.00."[5] However, the IRS claims that "[t]he premise of the restructuring was not the debtor's inability to make the payments, but the fact that the debtor had inadvertently accelerated payment of the tax liabilities by paying $50,000 per week."[6] According to the IRS, "there was no default when the parties restructured the payments in February 2007 and both parties continued to operate as if the plan was still in effect."[7]

---

[4] Motion for Order Disallowing Claim 1-3 filed by Department of the Treasury – Internal Revenue Service ("Motion"), Exh. F (emphasis added); Opposition of the United States of America to the Debtor's Motion for Order Disallowing Proof of Claim No. 5-3 [sic], filed by the Department of the Treasury Internal Revenue Service ("Opposition"), Exh. C (emphasis added).

[5] Motion,13:21-23.

[6] Opposition, 11:25 to 12:1.

[7] Id. at 12:4-6.

Case 2:09-bk-29121-DS    Doc 632    Filed 11/12/13    Entered 11/12/13 14:56:56    Desc
Main Document    Page 5 of 12

On September 5, 2007, a final decree was entered in Intercare's First Case. The case was closed on November 30, 2007. One year later, Intercare failed to make a plan payment due on November 14, 2008. Thereafter, Intercare ceased making payments. On January 26, 2009, the IRS sent a Notice of Default to Intercare pursuant to the terms of the First Case Plan.

On July 24, 2009, Intercare filed its voluntary petition under chapter 11 in this case ("Second Case"). On November 14, 2012, an order was entered confirming the Amended Joint Plan of Reorganization filed by Intercare and the Official Committee of Unsecured Creditors ("Second Case Plan"). In paragraph V(B)(3) of the Second Case Plan, the IRS was listed as the holder of a tax claim entitled to priority under § 507(a)(8) in the amount of $2,237,853. In its treatment of the IRS's priority tax claim, the proponents provided, in pertinent part:

> The Debtor or any party in interest may file objections to the IRS Tax Claim, but not later than ninety (90) days after the Effective Date, or such amount of time as extended by the Court. If the claim shall become a general unsecured claim, it shall be treated as a Class 12 Unsecured Claim.[8]

On May 14, 2013, the IRS filed Claim # 1-3 asserting an unsecured priority claim in the amount of $2,322,545.22 pursuant to § 507(a)(8) for unemployment tax liabilities for the years ending December 31, 2000, December 31, 2001, and December 31, 2002, and employment tax liabilities for the periods ending December 31, 2000, March 31, 2001, June 30, 2001, June 30, 2002, September 30, 2002 and December 31, 2002.

On July 15, 2013, Intercare timely filed a motion seeking an order disallowing the IRS's Claim # 1-3 as an unsecured priority claim. The IRS filed opposition to the motion on September 18, 2013, and Intercare filed its reply on October 29, 2013. After a hearing on November 6, 2013, the matter was taken under submission.

////
////
////
////

---

[8] Second Case Plan, 34:10-15.

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

### A. Standard Applicable to Objections to Claims

A proof of claim is deemed allowed unless a party in interest objects. 11 U.S.C. § 502(a). Absent an objection, a proof of claim constitutes prima facie evidence of the validity and amount of the claim under FRBP 3001(f). Lundell v. Anchor Constr. Specialists, Inc., 223 F.3d 1035, 1039 (9th Cir. 2000). The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of FRBP 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. Id.

When a creditor has filed a proof of claim that complies with the rules, thereby giving rise to the presumption of validity, the burden shifts to the objecting party who must "present evidence to overcome the prima facie case." United States v. Offord Fin., Inc. (In re Medina), 205 B.R. 216, 222 (9th Cir. BAP 1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." Lundell, 223 F.3d at 1039, quoting In re Holm, 931 F.2d 620, 623 (9th Cir. 1991). "The objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." Lundell, 223 F.3d at 1040, quoting In re Allegheny Int'l, Inc., 954 F.2d 167, 173-74 (3d Cir. 1992). If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. Ashford v. Consol. Pioneer Mort. (In re Consol. Pioneer Mort.), 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151 (9th Cir. 1996), quoting Allegheny Int'l, 954 F.2d at 173-74. The ultimate burden of persuasion remains at all times on the claimant. Lundell, 223 F.3d at 1039; Holm, 931 F.2d at 623.

### B. The IRS is Entitled to a Priority Tax Claim

Section 507(a)(8)(D) provides an eighth priority for an employment tax on wages, salaries or commissions earned prior to bankruptcy, whether or not paid, "for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition." 11 U.S.C § 507(a)(8)(D). The time period under § 507(a)(8)(D) is "suspended for any period during which a governmental unit is prohibited under applicable nonbankruptcy law from collecting a tax as a result of a request by the debtor, plus 90 days; plus any time during which the stay of proceedings was in effect in a prior case under this title or during which collection was precluded by the existence of 1 or more confirmed plans under this title, plus 90 days." 11 U.S.C. § 507(a)(8).

Intercare does not challenge the amount of Claim # 1-3, the nature of the taxes made the basis of Claim # 1-3, nor the date on which a return was last due with respect to each of the tax periods listed in Claim # 1-3. The sole issue before the court is whether the three-year period provided in § 507(a)(8)(D) expired prior to the filing of the petition in the Second Case. Intercare asserts that the three year period expired on October 19, 2008 because (1) a default occurred under the First Case Plan on October 19, 2005; (2) the default was not cured; and (3) the change in payment terms set forth in the letter dated January 10, 2006, constituted a material modification to the First Case Plan and was unenforceable to preclude collection efforts by the IRS absent approval by the bankruptcy court. Alternatively, Intercare argues that the three year period expired, at the latest, with the change in payment terms in February 2007.[9]

Because Intercare's tax debt arose more than three years before the filing of the Second Bankruptcy, it would be not be entitled to priority absent suspension of the lookback period under the unnumbered paragraph of § 507(a)(8) or application of the principles of equitable tolling. See Cal. Franchise Tax Bd. v. Kendall (In re Jones), 657 F.3d 921, 925-26 (9th Cir. 2011). Section 507(a)(8) suspends the three-year lookback period "for any period . . . during which collection was precluded by the existence of 1 or more confirmed plans under [title 11], plus 90 days." 11 U.S.C. § 507(a)(8).

---

[9] Motion, 14:4-22.

7

Case 2:09-bk-29121-DS    Doc 632    Filed 11/12/13    Entered 11/12/13 14:56:56    Desc
Main Document    Page 8 of 12

Intercare's First Case Plan provided for payment of the IRS's priority tax claim, and precluded efforts by the IRS to collect the claim pending timely payments by Intercare to the IRS on account of the claim pursuant to the confirmed plan. It is undisputed that Intercare defaulted on October 19, 2005, by failing to make the first payment due to the IRS under the plan. The First Case Plan required the IRS, in the event of a default, to send Intercare a Notice of Default and 30-days thereafter, a No-Cure Notice prior to commencing collection actions. Pursuant to the terms of the plan, the IRS sent Intercare a Notice of Default on December 28, 2005, advising Intercare that it had defaulted by failing to make the first quarterly plan payment of $411,209 that was due on October 19, 2005, and demanding that Intercare cure the default within 30 days. On January 4, 2006, Intercare cured the default by paying the sum of $411,209 to the IRS. The fact that Intercare was no longer in default in the payment of the IRS's priority tax claim was confirmed by Mr. Kogan's letter dated January 6, 2006. Because the default was cured and Intercare was current on its plan payments to the IRS, the IRS was precluded from engaging in any efforts to collect the balance of its priority tax claim after January 4, 2006, absent a further default by Intercare in its plan payments to the IRS.

In conjunction with Intercare's cure of the default, the IRS agreed to Intercare's offer to accept $50,000 weekly payments in lieu of $411,209 quarterly payments on account of its allowed priority tax claim under the First Case Plan. Intercare claims it remained in default after January 4, 2006, because "the smaller payments were not authorized by a Court order modifying the Plan."[10] The court disagrees.

A confirmed plan may be modified at any time after confirmation and before substantial consummation of the plan. 11 U.S.C. § 1127(b). Plan modifications do not require a new disclosure statement and court approval unless the modifications are material. See Andrew v. Coopersmith (In re Downtown Inv. Club III), 89 B.R. 59, 65 (9th Cir. BAP 1988). "A modification is *material* if it so affects a creditor or interest holder who accepted the plan that

---

[10] Reply to Opposition to Motion for Order Disallowing Claim 1-3 filed by the Department of the Treasury – Internal Revenue Service ("Reply"), 3:20-21.

8

such entity, if it knew of the modification, would be likely to reconsider its acceptance." In re Am. Solar King, 90 B.R. 808, 824 (Bankr. W.D. Tex. 1988).

The "modification" contained in Mr. Kogan's letter dated January 6, 2006, did not rise to the level of a material modification to Intercare's confirmed First Case Plan requiring court approval. Intercare and the IRS agreed to a change in the terms of payment of the IRS's allowed priority tax claim –nothing more, nothing less. The change did not increase the amount of the IRS's allowed claim, increase the amount or rate of interest payable on account of the claim, nor expedite payment of the claim under the confirmed plan. Nor did the change affect the treatment of any other creditor or class of creditors under the plan, or the timing or amount of any distribution to any other creditor or class of creditors under the plan. Furthermore, the IRS specifically agreed not to charge interest on the quarterly payments so long as the weekly payments were timely made. Under the circumstances, the court finds that the modification of payment terms on January 6, 2006, was not material because a creditor or interest holder who accepted the First Case Plan, if it knew of the modification, would not be likely to reconsider its acceptance of the plan.

There is no evidence of "other missed payments and defaults under the First Case Plan" after January 6, 2006, as claimed by Intercare. Nor does it appear that Intercare's failure to make timely weekly payments to the IRS was the reason for the later reduction of those payments from $50,000 to $32,500 in February 2007. The evidence supports a finding that on February 21, 2007, Intercare was not only current in its payments to the IRS on account of the IRS's priority tax claim, but appears to have made more payments than actually due as of February 21, 2007. According to the testimony of Neal Kakuske, an Insolvency Advisor for the IRS, the weekly payments were reduced to $32,500 at the request of Intercare on February 21, 2007, "because the payment of $50,000 per week had inadvertently accelerated payments to the IRS."[11]

After entry of the final decree in the First Bankruptcy Case, Intercare defaulted by failing to make the weekly payment of $32,500 due on November 14, 2008. After November 14, 2008,

---

[11] Opposition, 18:10-13.

9

the IRS was no longer precluded from pursuing collection of its priority tax claim by the existence of Intercare's First Case Plan. In Claim # 1-3, the oldest period for which employment taxes are sought is the quarter ending December 31, 2000, which had a return due date of January 31, 2001. The applicable three-year lookback period was suspended from December 27, 2002 (the petition date of the First Bankruptcy Case) to February 12, 2009, i.e., November 14, 2008, plus 90 days. Intercare filed its Second Bankruptcy Case on July 24, 2009. Based on the foregoing, the court finds that Claim # 1-3 is should be allowed as an unsecured priority claim under § 507(a)(8)(D).

### C. Equitable Estoppel

Finally, the court believes that the doctrine of equitable estoppel operates to prevent Intercare from claiming that the October 19, 2005 default was not cured and that the January 6th modification is unenforceable. There are four basic elements to the defense of equitable estoppel: (a) the party to be estopped must know the facts; (b) the party to be estopped must either intend that its conduct will be acted upon or act in a manner that the party asserting estoppel has a right to believe is so intended; (c) the party asserting estoppel must be ignorant of the true facts; and (d) the party asserting estoppel must rely on the conduct to its injury. The Alary Corp. v. Sims (Associated Vintage Group, Inc.), 283 B.R. 549, 567 (9th Cir. BAP 2002).

To halt the IRS's collection efforts initiated by the Notice of Default sent on December 28, 2005, Intercare (a) cured the default by paying the sum of $411,209 to the IRS on January 4, 2006; (b) confirmed in writing on January 6, 2006, that the default was cured by the IRS's acceptance of the $411,209 payment on January 4, 2006; and (c) negotiated more favorable payment terms to prevent a future default in the payment of the IRS's priority tax claim. The IRS accepted Intercare's terms and in reliance thereon, suspended further efforts to collect its priority tax claim pending timely weekly payments under the letter agreement dated January 6, 2006.

////
////
////

## CONCLUSION

Based upon the foregoing, the court will deny Intercare's motion and allow the IRS's Claim # 1-3 as an unsecured priority claim in the amount of $2,322,545.20 pursuant to § 507(a)(8)(D).

The IRS shall lodge a proposed order consistent with this Memorandum Decision.

###

Date: November 12, 2013

Peter H. Carroll
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*):   **MEMORANDUM DECISION** was entered on the date indicated as Entered on the first page of this judgment or order and will be served in the manner stated below:

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)** B Pursuant to controlling General Orders and LBRs, the foregoing document was served on the following persons by the court via NEF and hyperlink to the judgment or order. As of (*date*) 11-6-2013 , the following persons are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email addresses stated below.

- Catherine E Bauer     Catherine.Bauer@usdoj.gov
- Vivian Bodey     vivian.bodey@irscounsel.treas.gov
- Sara Chenetz     schenetz@perkinscoie.com, dlax@perkinscoie.com
- Matthew J Eandi     mjeandi@ecjlaw.com, lpekrul@ecjlaw.com
- Barry S Glaser     bglaser@swesq.com
- Michael D Good     mgood@southbaylawfirm.com
- Michael C Heinrichs     mheinrichs@omm.com
- Nicolino I Iezza     niezza@spiwakandiezza.com
- Peter F Jazayeri     peter@jaz-law.com
- Michael S Kogan     mkogan@koganlawfirm.com
- Michael S Kogan     mkogan@koganlawfirm.com
- Kenneth G Lau     kenneth.g.lau@usdoj.gov, dare.law@usdoj.gov,melanie.green@usdoj.gov,kelly.l.morrison@usdoj.gov
- Elan S Levey     elan.levey@usdoj.gov, louisa.lin@usdoj.gov
- Howard S Levine     howard@cypressllp.com, jennifer@cypressllp.com
- Michael V Mancini     mmancini@ecjlaw.com
- Frances M O'Meara     fomeara@kdvglaw.com, hnguyen@kdvglaw.com;gmatteson@kdvglaw.com;jblack@kdvglaw.com
- Mark Palley     mp@marionsinn.com
- Cindy S Park     Cindy.Park@irscounsel.treas.gov
- Faye C Rasch     frasch@ecjlaw.com, kanthony@ecjlaw.com
- Mary H Rose     mrose@buchalter.com, mrose@buchalter.com
- Mary H Rose     mrose@buchalter.com, mrose@buchalter.com
- John W Shenk     jshenk@ecjlaw.com
- Barry Sullivan     bsullivan@sacfirm.com
- Matthew J Troy     matthew.troy@usdoj.gov
- United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY THE COURT VIA UNITED STATES MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States mail, first class, postage prepaid, to the following persons and/or entities at the addresses indicated below:
NONE